\*\*E-Filed 5/4/07\*\*

NOT FOR CITATION

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| IN RE<br><br>JTS CORPORATION, a Delaware corporation, fka ATARI CORPORATION,<br><br>    Debtor.<br>_____<br><br>SUZANNE L. DECKER, Trustee,<br><br>    Appellant-Plaintiff,<br><br>    v.<br><br>JACK TRAMIEL,<br><br>    Appellee-Defendant. | Case Number C 05-4709 JF<br><br>ORDER DENYING CROSS-MOTIONS FOR RECONSIDERATION |

    Appellant-Plaintiff Suzanne L. Decker, the chapter 7 bankruptcy trustee ("the Trustee"), and Appellee-Defendant Jack Tramiel ("Tramiel") have filed cross-motions for reconsideration of this Court's disposition of the Trustee's appeal of the bankruptcy court's judgment in her adversary proceeding against directors, attorneys and shareholders of the debtor company, JTS Corporation ("JTS"). The Court, having considered the briefing of the parties as well as the oral arguments presented at the hearing on December 15, 2006, resolves the cross-motions for reconsideration as follows:

## I. DISCUSSION

**(A)     Procedural Issue**

The Trustee characterizes her motion as a motion for rehearing under Federal Rule of Bankruptcy Procedure 8015, which is the proper vehicle for the motion. Tramiel characterizes his motion as a motion to amend judgment under Federal Rule of Civil Procedure 59(e) or as a motion for relief from judgment under Federal Rule of Civil Procedure 60(b). The Trustee asserts that Tramiel's motion under these rules is procedurally improper, and that any such motion must be brought under Federal Rule of Bankruptcy Procedure 8015. The Court concludes that the Trustee is correct. However, because the Trustee has not suffered any prejudice from Tramiel's mischaracterization of his motion, the Court construes Tramiel's motions as being brought under Federal Rule of Bankruptcy Procedure 8015.

**B.     Trustee's Motion**

   **1.     Interplay Between Bankruptcy Code And California Fraudulent Transfer Law**

In its order addressing the Trustee's appeal issued September 29, 2006, this Court devoted significant time and analysis to the interplay between the Bankruptcy Code and California's fraudulent transfer laws, and ultimately concluded that the limit on liability for a good faith purchase imposed by California Civil Code § 3439.08(d) (the provision allowing a good faith purchaser to set off monies paid in the transaction) was imported into 11 U.S.C. § 544(b) and 550(a) along with other provisions of California's fraudulent transfer laws. The Trustee argues that the Court is simply wrong in its analysis, citing various Supreme Court and Ninth Circuit cases that she asserts establish the general rule that a transfer that is only partially avoidable under state law is fully avoidable under bankruptcy law. These cases include *Moore v. Bay*, 52 S.Ct. 3 (1931) and *Miller v. Sulmeyer*, 263 F.2d 513 (9th Cir. 1959). These cases do not address the particular California statutes at issue. They were cited by the Trustee in the original briefing, although they were not explicitly addressed in the Court's order on the appeal. The Court has revisited the cases cited by the Trustee, but is not inclined to change its legal conclusion regarding the applicability of California Civil Code § 3439.08(d) on the facts of this

2

case. Accordingly, this portion of the Trustee's motion for reconsideration will be denied.

The Trustee also attacks once again the conclusion that Tramiel was a good faith transferee. Tramiel's good faith was a factual finding by the bankruptcy court that this Court concluded was not clearly erroneous. The Trustee has not presented a sufficient basis for reconsideration of this conclusion.

**2.    Debt Relief**

This Court upheld the bankruptcy court's factual finding that the debt relief was not a purchase or redemption of shares, and thus did not fall within 8 Del. C. § 160, prohibiting a corporation from purchasing or redeeming its own shares when the capital of the corporation is impaired. The Trustee argues that regardless of what the corporation *called* the transaction, the fact is that the corporation impaired its capital by releasing Tandon from a $1 million promissory note and thereby reacquired stock. The Court concludes that the cases cited by the Trustee cannot be read as broadly as argued by the Trustee. The Court therefore declines to reconsider its conclusion that the bankruptcy court did not clearly err with respect to its characterization of the debt relief to Tandon and Mitchell.

**C.    Tramiel's Motion**

**(1)    Value Of The Option**

The bankruptcy court valued the repurchase option in the real estate transaction at $432,815. Tramiel did not challenge this value on appeal. The Court thus adopted this value of the option in calculating Tramiel's set off for value paid under California Civil Code § 3439.08(d). Tramiel now argues that $432,815 is not the appropriate value of the option.

When the bankruptcy court calculated Tramiel's set off and liability for the real estate transaction, the court subtracted the value Tramiel paid from the properties' *reasonably equivalent value*, finding that the difference between what Tramiel paid and the properties' fair value was $1,387,185. The bankruptcy court thus found that the transaction could be avoided in the amount of $1,387,185. This Court concluded that the proper calculation was to subtract the value that Tramiel paid from the properties' *fair market value*, and found that difference to be $6,714,370. Tramiel argues that the proper calculation for the value of the option is to subtract

the strike price from the fair market value, citing *In re Calvillo*, 263 B.R. 214 (W.D. Tex. 2000). Tramiel argues that the bankruptcy court assigned fair market value of $11,820,000 and then subtracted the strike price of $11,387,185 to obtain the option value of $432,815. Tramiel argues that if this Court is going to change the fair market value to $17,147,000, then the value of the option must go up, because the formula stays the same. Tramiel argues that if the strike price of $11,387,185 is subtracted from the fair market value of $17,147,000, the result is an option value of $5,759,815. If Tramiel is allowed to set off the $10 million he paid, plus the $5,759,815 value of the option he gave in the transaction, his total liability is $1,387,185, the number arrived at by the bankruptcy court.

Tramiel's arguments are unpersuasive because (1) he did not appeal the bankruptcy court's option valuation and (2) the bankruptcy court stated explicitly that it was *not* using the *Calvillo* formula and in fact did not use that formula. While the bankruptcy court erroneously referred to the $11,820,000 as the fair market value at times, it is clear from the bankruptcy court's decision as a whole that it actually characterized this figure as the reasonably equivalent value, which was fair market value discounted for bundling and quick sale. Accordingly, this Court concludes that Tramiel has not presented any basis to recalculate the option value.

### 2. Settlement Credit

Tramiel objects to the Court's determination that the evidence demonstrated that the $4.5 million in settlement proceeds were allocated to claims other than the claim for which Tramiel was found liable, and thus that Tramiel is not entitled to a credit for any part of that settlement. Tramiel essentially rehashes his arguments presented in the context of the appeal. The Court addressed these arguments in its order on the appeal.

Tramiel also argues that aside from the settlement proceeds of $4.5 million previously addressed by this Court, there were additional settlement proceeds of $4 million, and that he is entitled to a credit for the $4 million amount. Tramiel did not raise this issue on appeal. He argues that the bankruptcy court never addressed the question of whether he was entitled to a credit for the remaining $4 million in settlement proceeds, because the bankruptcy court determined that he was entitled to a credit for the $4.5 million, and that was enough to wipe out

4

1  his liability.  He suggests remand to the bankruptcy court for determination as to the earlier
2  settlement proceeds.  However, as the Trustee points out, Tramiel easily could have cross-
3  appealed with respect to the remaining $4 million once the Trustee made clear its position that
4  Tramiel was not entitled to a credit for the $4.5 million.  Accordingly, the Court declines to
5  reconsider its ruling on the settlement credit or to remand for further proceedings on this point.

## II. ORDER

The parties' cross-motions for reconsideration are DENIED.

DATED:  5/4/07

_____
JEREMY FOGEL
United States District Judge

1  This Order was served on the following persons:

2

3  Christian B. Nielsen     cbn@robinsonwood.com

4  Daniel Rapaport     drapaport@wendel.com, calendar@wendel.com; gcone@wendel.com

5  Jeffrey C. Wurms     jwurms@wendel.com, calendar@wendel.com; nschrager@wendel.com

6  Mai T. Buell
   Law Offices of Robinson and Wood
7  227 N. First Street #300
   San Jose, CA 95113
8
   Marilyn Morgan
9  U.S. Bankruptcy Court
   280 South First Street, Room 3035
10 San Jose, CA 95113

11 USBC Manager-San Jose
   US Bankruptcy Court
12 280 South First Street, Room 3035
   San Jose, CA 95113

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6

Case No. C 05-4709 JF
ORDER DENYING CROSS-MOTIONS FOR RECONSIDERATION
(JFLC2)